CHARLES BROWN, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An allegation in an indictment charging murder by the infliction of a wound upon the body with a dangerous weapon, of which wound death immediately ensued, the words "mortal wound" not being used, is sufficient to warrant a verdict of manslaughter.

2. Whether the words "mortal wound" are necessary in an indictment for murder by wounding to justify a verdict for murder in any of its degrees, the indictment alleging that the deceased died of the wounds, considered.

3. It is not strictly correct to charge a jury that "it is for you to say from all the evidence whether or not the prisoner killed the deceased, and whether, if he did so, there was any fact or circumstance in the case to reduce the killing from murder *to self-defence* or to manslaughter," because the jury are by law authorized to

inquire further whether from the facts proved the killing was justifiable. or excusable, and the law excuses or justifies a homicide in cases other than that of self-defence.

4. In defining to a jury the several degrees of homicide and the facts which constitute each as defined by statute, the court should generally also give the exceptions mentioned in the statute, wherein the killing is declared to be justifiable or excusable.

5. Where the testimony upon a charge of homicide is so strong and clear as to preclude the conclusion that the killing was excusable or justifiable, and that a verdict of guilty of manslaughter in the third degree is fully sustained by the evidence, the verdict should not be set aside upon the ground that the Judge did not instruct the jury fully upon the question of justifiable or excusable homicide.

Writ of Error to the Circuit Court for Franklin county.

The facts of the case are stated in the opinion.

*John W. Malone* for Plaintiff in Error.

*The Attorney-General* for The State.

The Chief-Justice delivered the opinion of the court.

Brown was convicted of manslaughter in the third degree under an indictment charging murder.

The indictment charged that the accused, with a premeditated design to effect the death of one Willis Taylor, with a knife inflicted wounds upon the body of Taylor, (upon his abdomen and upon his back,) of which wounds Taylor died on the same day.

The Judge charged the jury (par. 2) that " a sane man is conclusively presumed to contemplate the natural consequences of his own act, and, therefore, the intent to murder with malice aforethought is conclusively inferred from the deliberate use of a deadly weapon, in the absence of opposing evidence. It is for you alone to say from all the evidence whether or not the prisoner killed the deceased, and whether,

if he did so, there was any fact or circumstance in the case to reduce the killing from murder to self-defence or to manslaughter."

It is alleged for error that the wounds are not alleged in the indictment to be "mortal wounds."

Bishop on Crim. Procedure, Vol. 2, §521, says: "Every indictment of this sort must state that the wound was 'mortal;' which is usually done by the use of the adjective, as 'one mortal wound,' &c., and refers to the case of Lad, reported in 1 Leach. Lad was indicted for the murder of a girl nine years old by committing a rape upon her. The Judges unanimously agreed that the indictment was bad, because it only said he did grievously lacerate and wound, * * * of which laceration and bruises she died, but had omitted to aver 'thereby giving the said F. P. one mortal wound or bruise.'"

In 2 Hawkin's Pleas of the Crown it is said (Ch. 23, §81) that the count should show the length and breadth of the wound that it may appear to the court that it was mortal; "but it is said that anciently this was not required; and if a man be shot or run through the body with a bullet or sword, &c., it seems sufficient to say that the defendant, with malice, &c., struck the person killed in such a part of his body, and gave him in such part *mortale vulnus penetrans in et per corpus*, &c., for this *sufficiently shows* that the wound was mortal."

The principal case referred to as authority for the proposition that the words "mortal wounds" must be used in an indictment for murder by wounding or bruising is that of Lad in 1 Leach. It is referred to in every case that treats of the question, (though they are very few,) and it may be said that the rule was established in that case to the satisfaction of many of the Judges.

I am unable to comprehend any reason for such a rule.

Hawkins' P. C. practically repudiates it in the paragraph above quoted. I think if an indictment alleges that one struck another with an axe and cut off his head, of which wound the latter died, it is unnecessary, superfluous and tautological to aver that the wound was " mortal." I think the allegations of the facts of the wounding with the weapon and the death *therefrom* is a sufficient averment that it was a " mortal wound." Hawkins (in Sec. 83) says further: " Yet where the death was caused by divers poisons, wounds, &c., the court may say in general that the party died of the several poisons or wounds above mentioned without saying that he died of any one of them in particular; for, perhaps, the truth of the case might be that none of them alone, but all together, caused the death."

Lord Hale says : " If a man gives another a stroke which, it may be, is not in itself so mortal but that, with good care, he might be cured, yet if he dies with this wound within the year and day it is homicide or murder, as the case is, and so it hath been always ruled. * But if a man receives a wound which is not within itself mortal, but either for want of helpful applications or neglect thereof it turns to a gangrene or fever, and that gangrene or fever be the immediate cause of his death, yet this is murder or manslaughter in him that gave the stroke or wound, for that wound, though it were not the immediate cause of his death, yet if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so, consequently, is *causa causati*." 1 Hale P. C., 428. Nor will the neglect or disorder in the person who receives the wound excuse the person who gave it. If the death be owing truly to the wound, it signifies not that the deceased would have recovered under more favorable circumstances, or with more prudent care ; the death being the result of

the wound, the party inflicting it must be held responsible for it. (McAllister vs. State, 17 Ala., 434 ; Roscoe's Cr. Ev., 574 ; 2 Whar. Cr. Law, §941 ; State vs. Brantley, 44 Conn., 537 ; People vs. Steventon, 9 Cal., 273.)

It is unnecessary to multiply authorities to the point. The proof of felonious homicide by wounding is such evidence as shows the infliction of the injury ; that the death resulted from it, and that such wounding was unlawful. Proof of these facts to the satisfaction of the jury, with time, place, &c., justifies a verdict of murder or manslaughter, as they view the facts proved. No other *evidence* that the wound was mortal is required. What better allegation that the wound was " mortal " can be required than that the deceased died of the wound ?

I insist that the rule requiring that, in addition to requiring the statement of the cause and the manner of the death, the further statement that the wound was " mortal " has no authority in the logic of the law. The practice has conformed to the forms prescribed by an ancient court, and been perpetuated by the compilers of form books and precedents ; and, in my judgment, the use of the words " mortal wounds " in an indictment for murder by felonious wounding are unnecessary and superfluous, where the indictment alleges a wounding which produces death, and precludes the suggestion that the death was caused by any other means.

I make these suggestions as the result of my own study of the matter and of the adjudged cases. I think also that the same opinion was entertained by Mr. Serjeant Hawkins. (Pleas of the Crown, Vol. 2, Ch. 23, §§81, 83.)

But although the indictment in the case at bar purports to charge the crime of murder, the conviction was for manslaughter.

In Macloon's case (Massachusetts), where the indictment

was for manslaughter by assaulting and beating with sundry weapons upon the head and body of the deceased, and by exposing him to the severities of the weather, wind, rain, frost and cold, and depriving him of food, it was objected that the wounds and other causes of death were not alleged to be " mortal." Mr. Justice Gray, delivering the opinion of the court, says : " The objections to the form of the indictment are both answered by the consideration that it is not framed upon the theory that either of the means alleged alone was necessarily the cause of the death, but upon the theory that the blows, the starving and the exposure co-operated to produce it. In such a case it is abundantly established by precedents that it is sufficient to allege that the death resulted from all these means without otherwise alleging either of them to have been mortal, and to prove that it resulted from *any or all of them.*" (Com. vs. Macloon and others, 101 Mass., 1, 2, 3.) The court cites in support of this 2 West's Simb., §§301, 308 ; Weston's case, 3 Inst., 50, 135 ; Jackson's case, 18 Howell's St. Trials, 1075, 1111 ; 2 Hawk. C., 23, §83 ; The King vs. Clark, 1 Brod. & Bing., 473 ; Com. vs. Stafford, 12 Cush., 619.

Lord Hale, in the language before quoted from Pleas of the Crown, and Roscoe and Russell on Crimes, and other writers cited in the authorities above referred to, all say that whether a wound is necessarily mortal or not mortal, but the man dies by means of gangrene, &c., the intervening causes being superinduced by the wounding, the person giving the wound is guilty of murder or manslaughter or excusable or justifiable homicide, according to the circumstances appearing to the jury. Therefore it would not be true in many cases to allege that the wounds were " mortal," yet the accused would be held guilty of the death because he feloniously inflicted the wound which, though not necessarily mortal, was the cause of it, and he is re-

sponsible for the consequences of his acts unless the testimony shows facts which relieve him of them.

The result is that this indictment, whether good or bad as an indictment for murder, is a good indictment for the crime of manslaughter, of which the accused was found guilty by the jury.

[NOTE.—Since the filing of this opinion we have found the case of The People vs. Judd, 10 Cal., 313, in which the court, Field J., thus summarily disposes of the foregoing question: "The allegation that the deceased at the time died of the wound inflicted is a sufficient statement that the wound was mortal." See also People vs. Cronin, 34 Cal., 191, 200.]

The second paragraph of the charge was excepted to. It would be clearly erroneous to say that a " sane man is *conclusively* presumed to contemplate the consequences of his acts " without the qualification that evidence of all the facts attending the act may be considered to remove such presumption. We think the words concluding the sentence, " in the absence of opposing evidence," must have been understood to give the necessary qualification. Those words must be held to qualify the entire sentence in which they are used. The meaning of this portion of the charge then is that in the absence of evidence tending to oppose the presumption that the man does contemplate the natural consequences of his act, the presumption becomes conclusive of the animus. The jury cannot have been misled by the charge in this respect.

The last sentence of the second paragraph of the charge instructs the jury that they may say, from all the evidence in the case, whether, if the prisoner killed the deceased, " there was any fact or circumstance in the case to reduce the killing from murder to self-defence or to manslaughter."

The jury was confined within too narrow limits by this

instruction. They are limited to the inquiry whether they might find facts or circumstances in the case to " reduce the killing from murder to *self-defence* or to manslaughter."

If, under this charge, the jury should find that the offence was not murder, they are confined to the duty of finding a verdict of manslaughter, unless a case of " self-defence " is shown. The statute, however, authorizes the jury to find that a homicide is excusable or justifiable in other instances than that of self-defence.

The same criticism was made in Dukes vs. The State, 14 Fla., 499, 523. Whether this charge, if erroneous, should affect this verdict depends upon the testimony and the law applicable to it.

The third paragraph of the charge excepted to reads as follows:

" If you believe from the evidence that the prisoner killed the deceased with a dangerous weapon, not from a premeditated design, but from the heat of passion aroused by a sudden fight with the deceased, you will find him guilty of manslaughter in the third degree."

The statute (Sec. 14, Ch. III., of the Criminal Code of 1868,) under which this charge was given, has this qualification : " Except such wherein the killing of another herein is declared to be justifiable or excusable."

If there was any feature of the testimony that seemed to require the expression, " from the heat of passion aroused by a sudden fight," it would also seem to be necessary to add the above qualification, " except," &c., because if there was a " sudden fight " the jury should know how far, and in what circumstances, they might feel warranted in giving the prisoner the benefit of the exception, and they ought, in such case, also to be informed under what circumstances a homicide is justifiable or excusable under the statute.

There was some slight evidence of a " fight " between the accused and the deceased. The accused came to the house where the deceased lived with his parents, and the wife of the accused was there having blood upon her from a recent wound. Brown, the accused, came in and seized a fire-dog and pursued his wife with it. The mother of deceased took away the fire-dog from Brown on the piaza. Willis Taylor, the deceased, told Brown not to strike his mother, and Brown was ordered out of the house, and Willis went out also; and on the piaza of the house the affair culminated. It was " about an hour after night." Witnesses state that Willis was unarmed, and " Brown cut him three times." Nobody saw the cutting, but Mrs. Taylor " heard the knife cut through the pants of Willis," she being on the piaza at the time. Brown " cut the guts out " of Willis, who died next day on the way going to town to have his wounds dressed. The wounds were in the abdomen and on his back. Mrs. Taylor says Brown and Willis were disputing and went out on the piaza. Eli Taylor says he " did not see the fighting;" that he " had no idea they would fight; as I heard them fighting I ran out there, and when I got there Willis told me to do something for him ' as my guts are cut out.' " Doctors testified that the death was from the wounds. Mrs. Taylor says that after the cutting she picked up a stick and threw it at Brown, and he ran away.

This is all the testimony as to fighting. There is no testimony of any loud noise or struggling between the disputants, so far as the record shows, save the statement of Eli Taylor, " as I heard the fighting I ran out," &c. This does not show that Willis Taylor was making an assault of any kind, or was in any way aggressive.

Whatever want of precision, therefore, on the part of the Judge in his charge, which might have been a material

error if the testimony had shown that there was a mutual combat, and it had appeared that there was cause or excuse for the use of a dangerous weapon by Brown, it could have availed him nothing before any intelligent jury upon this evidence if the charge had been more full and precise in the respects complained of, and the verdict must have been at least that of manslaughter in the third degree, as found by this jury.

We do not find in the record that any error appears to have been committed affecting the rights of this defendant.

In such case, considering that *any* proper charge by the court to the jury must have produced a verdict of guilty of an offence of the grade found, and although it may appear that abstract errors may have occurred, not prejudicial to the defendant and from which he has suffered no damage, the verdict should not be disturbed. (5 Fla., 268; ib., 465; 6 ib., 482; 8 ib., 391; 17 ib., 730.)

The judgment is affirmed.