A. L. Wooten v. The State of Florida—Syllabus.

| | |
|---|---|
| 24 | 335 |
| 29 | 307 |
| 29 | 564 |
| 24 | 335 |
| 31 | 337 |
| 24 | 335 |
| 34 | 243 |
| 24 | 335 |
| 35 | 209 |
| 24 | 335 |
| 39 | 450 |
| 24 | 335 |
| 41 | 306 |
| 24 | 335 |
| 42 | 527 |
| 24 | 335 |
| 46 | 165 |
| 24 | 335 |
| 52 | 49 |
| 24 | 335 |
| 54 | 160 |

A. L. WOOTEN, PLAINTIFF IN ERROR VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The fourth section of "an act to suppress gambling houses and gambling," approved June 7th, 1887, which provides : "That if any of the implements, devices, or apparatus commonly used in games of chance usually played in gambling houses, or by gamblers, are found in any house, room, booth, shelter or other place, it shall be *prima facie* evidence that the said house, room or place where the same are found is kept for the purpose of gambling," is not unconstitutional.

2. The constitutionality of the above section is not impaired by other sections of the same statute, (assuming the latter to be unconstitutional,) making it the duty of the Sheriff or other police officer to seize the implements and have them publicly destroyed in the street in the presence of witnesses, and authorizing any Sheriff, City Marshal or Chief of Police to enter, forcibly if necessary, and without written warrant, any house or other place in which he may have good reason to believe that gambling is being carried on, and arrest any persons violating the act. The former pro-

vision or section is entirely independent of the latter sections, and it cannot be held that the Legislature would not have adopted the former without the latter.

3. Where certain provisions of a statute are in no wise practically involved in the case under consideration their constitutionality will not be passed on.

4. The effect of section 4 of the statute, as set out above, is to authorize the jury to infer from the proof of the finding of such implements devices or apparatus that the room they were found in was kept for the purpose of gambling, where there is nothing in the attendant circumstance, or in any of the evidence in the case, raising in their minds a reasonable doubt to the contrary.

5. The section in question does not give to proof of such finding the further effect of *prima facie* proof of the actual use of the instruments as another and independent evidence that the house, room or other place is kept for the purpose of gambling.

6. If there is nothing in the testimony of the State or of the defence to control the presumption which the statutes authorizes to be drawn by the jury from the proof of the fact of the finding, they may infer from the proof of such fact that the room or house was kept for the purpose of gambling, but if there is any evidence whatever bearing upon the point of whether or not the implements were actually used for the purpose of gambling, the jury are to consider it and give to it such weight as in their judgment it is naturally entitled to.

7. The purpose of the first section of the statute, in so far as it applies to having, keeping, exercising or maintaing a gaming room, or a house, or other place for the purpose of gaming or gambling. is to punish the person whose establishment, or enterprise, or business the gambling house is, whether he operate or manage it in person or "by himself," or do so by a servant, clerk, agent, or in any other manner; and the object of the second section is punish any one acting as the servant, clerk, agent or employee of the former person in carrying on, or operating or managing the house or other place for the purpose of gambling.

8. In a prosecution under the first section the jury must be satisfied beyond a reasonable doubt that the defendant is the person whose establishment or business the gambling room is, but proof (should there be such) that there was an arrangement between the defendant and his agent managing the business for

him, by which as one of the terms of his employment the latter was to regulate or control the operation of the business in the room, and to use his own judgment as to preventing persons from playing, would not of itself defeat a conviction; and it was consequently not error to refuse to charge the jury that they must be satisfied "beyond a reasonable doubt that the defendant had the control or arrangement of the room, that is, he could regulate and control what was done there, and could have prevented the person or persons from playing, if he had seen fit to do so."

9. Where an instruction embodying both a correct and an incorrect proposition of law is requested, it is not error to refuse to give it.

10. It is not error to refuse to give an instruction to the jury when the substance of it is contained in a charge already given them.

11. It is not error to refuse to charge a jury that the legal presumption of innocence is to be regarded by the jury as a matter of evidence, where they have been charged that the law presumes every man innocent until he is proven guilty by proper legal evidence, and if they have any reasonable doubt as to the guilt of the defendant arising from the evidence, they should acquit him.

12. Where the testimony is clearly sufficient to sustain the verdict, and it is evident that no injury could have been sustained by an error in an instruction given to the jury, the verdict will not be disturbed.

Writ of error to the Criminal Court of Record for Duval county.

The offence with which the plaintiff in error is charged is keeping a room for the purpose of gambling.

The only testimony is that introduced by the State. It is as follows:

Ed. Williams testified that on Friday, March 2d, 1888, between 10 and 11 o'clock P. M., he invaded certain premises on Newnan street, in Jacksonville, Duval county, Florida. That he was instructed by the Sheriff to take

23

some men and raid what had been reported to him as a gambling house, known as the Atlantic Garden, situated on said street. That he went, accompanied by three others, and sent two men through the saloon, to come up the back way, while witness and another person took the front entrance. That in the meantime, as witness sent the two men through the bar room, the party ran right in behind witness, and by the time witness got to the top of the stairs, there was a commotion ; in fact, witness thought the roof was coming down, " and they proceeded to come down the stairs." Witness stopped them and went up into the room and found some people, probably twenty-five or so ; saw three tables in the room, chips upon the table, packs of cards upon one of the tables, and evidence of a game having been carried on. One party was sitting at the table and the balance was stirring around the room. The room is on Newnan street, between Bay and Forsythe streets, and over what is known as the Atlantic Garden. Saloon kept, witness thinks, by Mr. Zaum. Witness took possession of the tables and they are at the jail. They are two round tables, and one in the shape of a half moon, with a drawer and a little slip, a small metal plate over a hole for slipping something down into the drawer, covered over with green cloth. The chips were not such as fly fr m wood when you cut it. Witness supposes they were made of celluloid, or bone—something of that sort ; they were red, white and blue. These chips are generally purchased by those desiring to play at a game. He saw one man get $5 for the chips he had in his possession. There was $5.05 coming to him, so he said, but he got $5 ; this was the night in question. Witness did not, when he went up there, see the defendant, but he appeared on the scene about two or three moments after. The defendant, when he came into the room, asked where Lee was. He came

into the room rather excited, and said : " Where's Lee ?"
Lee did not appear to be there. He asked the question
two or three times. Witness did not know who Lee was,
or where he was. Witness removed the furniture Satur-
day evening. Mr. Wooten was there when he moved it ;
witness talked with him. " He was not there ; I met him
on the street and he went up with me." This was in Du-
val county, State of Florida.

On cross-examination he said that on the first table near
the door there were some stacks of chips ; one party sitting
at the table, two or three stacks of chips turned over and a
pack of cards on the table. Witness, in reply to the ques-
tion, if he considered always the presence of chips, cards
and tables as evidence of gambling, replied, " I consider
it in connection with the surroundings." The circumstan-
ces and surroundings were, " a number of people around
in the room, and a little knowledge I have of my own in
going around the world would lead me to that conclusion."
Question. " Then a part of your evidence is drawn from
what you have seen in going around the world ?" Answer.
" Yes, sir, and what I saw there." Did not see Wooten
when he, witness, went in. Saw some one pay the $5 in
the room ; is sure of this ; heard him say there was five
cents more coming to him. Wooten, when he came in,
came up the stairway witness had entered at.

N. B. Broward testified that he was not at the room the
night in question. That night Wooten asked him on what
grounds he had arrested him, and witness told him as pro-
prietor of this gambling house. The next day he asked
witness if he, Wooten, could get a few articles out of there
that were not of much value, but were of value to him, say-
ing they were worth $8 or $10, and that he would not move
any of the fixtures, and witness told him if he did not move

any of the fixtures in the house he had no objections to his moving anything that was of no consequence to witness.

Captain Floyd testified that he knew of the Atlantic Garden on Newnan street, and has been there, and that the room is used for card playing. He has seen Wooten deal cards there, has seen him up there; has seen him deal and tell his man, Mr. Lee, what to do. Lee was dealing. Question. "You say you have seen him tell Mr. Lee what to do. Who seemed to be in control or management of the place?" Answer. "Mr. Wooten seemed to be the man." Witness has been there more than once. Question. "Since when; how long, recently of course?" Answer. "Three weeks past."

Cross-examination:

Has seen others than Mr. Wooten deal, has seen Lee deal, never saw Lee give any orders. Witness has never dealt there. Never heard any one but Wooten give orders there with regard to the running of the game. Question. "In regard to running the house?" Answer. "Mr. Lee gave orders to the man there." Saw Wooten there first, about eight or ten days ago. Question. "Didn't Mr. Wooten seem to be a player there at the time. Wasn't he a player?" Answer. "Yes, sir, he played some." Has seen others aside from Mr. Wooten and Mr. Lee deal there.

Mr. Zaum, another witness, on being asked whether a room above his place has been rented, and, if so, who made application to him to rent it recently, replied: "Yes, sir, I know very little about it; all I know is Mr. Wooten came to me and asked me if the room was to let. He asked me if I knew him, I said no sir. I said to him that if he want to rent the rooms, the rooms were to let for family use, lodging rooms or for office, and I did not know Mr. Woot-

en, so I sent him to Mr. Rebston. He said he knew Mr. Rebston. I did not know him then at that time, the only time that I ever seen the gentleman before in my life. Witness says he, witness, was not there when Wooten met Mr. Rebston. That " he (Wooten) went to Mr. Rebston and dat all I know about it. I haven't seen Mr. Wooten for some time. I don't ask Mr. Rebston; Mr. Rebston don't ask me."

Cross-examination :

Question. " Has anybody paid the firm any money for that room ?" Answer. " No, not to me." Question. " Do you know who has been the tenant or keeper of that room ?" Answer. " That I cannot say. I goes down in the morning and opens up and knows nothing about business whatever."

The other facts are stated in the opinion.

*Hartridge & Young* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the Court:

I. This is a writ of error to the Criminal Court of Record of Duval county, Secs. 5 and 24, Art. V, Constitution, and Chapter 3731, Laws of 1887. The plaintiff in error was found guilty upon an information charging that he, on the third day of March, of the present year, in the named county in this State " did unlawfully have, keep, exercise and maintain a gambling room situated on Newnan street, in the city of Jacksonville, for the purpose of gaming, contrary to the form of the statute in such cases made and provided ;" and the sentence pronounced upon him is confinement in the county jail at hard labor for the term of three months.

The first section of " an act to suppress gambling houses and gambling," approved June 7, 1887, (chapter 3764,) provides, " If any person by himself or herself, servant, clerk, agent or in any other manner shall have, keep, exercise or maintain a gambling table or room, or gaming implements or apparatus, or house, booth, tent, shelter or other place for the purpose of gaming or gambling, * * * he, she or they so offending, shall on conviction be imprisoned in the county jail not less than three months nor more than one year, or be imprisoned in the State Prison nor more than three years, at the discretion of the Court."

The fourth section of this statute is as follows : That if any of the implements, devices or apparatus commonly used in games of chance usually played in gambling houses or by gamblers, are found in any house, room, booth, shelter or other place, it shall be *prima facie* evidence that the said house, room or place where the same are found is kept for the purpose of gambling.

Upon the trial the judge charged the jury as follows : " 2d. If any implements, devices or apparatus commonly used in games of chance usually played in gambling houses, or by gamblers, are found in any house, room or other place, the finding of such implements, devices or apparatus in said house, room or other place is *prima facie* evidence that such instruments are used for the purpose of gambling ; that is the law presumes upon the finding of such implements, devices or apparatus in a house or room that said *implements* were used for gambling purposes, and the burden of showing that they were not used for gambling purposes devolves upon the prisoner, if the jury believes from the evidence that the prisoner kept, exercised and maintained the house or room in which they were found."

The defendant's counsel excepted to the second of the

above charges, and presented the following instructions, which the judge refused to give :

1st. That the fourth section of the statute (stating its terms) is unconstitutional and void as depriving the defendant of equal protection of the laws of the land and subverting the presumption of innocence.

2d. That the finding of any of the implements, devices or apparatus commonly used in games of chance usually played in gambling houses or by gamblers in any house, room, booth, shelter or other place is not *prima facie* evidence that the house, or room, or place where the same are found is kept for the purpose of gambling.

The giving of the above charge, and the refusal of the first and second instructions asked by the defendant's counsel, involve two questions: 1st. Is the fourth section of the statute in question unconstitutional, and 2d, is the " charge " as given justified by the fourth section of the statute, or is it proper, independent of said section ?

(*a*). It is argued that the fourth section is unconstitutional because it deprives the citizen of due process of law, and the definition of such process of law given by Daniel Webster is referred to in support of the argument : " By the law of the land is most clearly intended the general law ; a law which hears before it condemns ; which proceeds upon enquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty property and immunities under the protection of the general rules which govern society." These words are the substance of the definition, the others but explain them by stating what is not such law of the land. They are either familiar or easily accessible ; to all. This section of the statute is applicable to all who may come within its provisions ; it is general and not special ; it does not of itself

condemn any one, but it establishes a general rule to be applied by the courts, in the trial of any one charged with the offence denounced by the statute and to which it applies. It does not present a suggestion contrary to proceeding only upon inquiry or rendering judgment only after trial. It establishes a general rule governing society in the matter to which it is applicable and the liberty of one citizen, not more nor less than another, is subject to its provisions.

All this section does is to make the finding of any of the implements, devices or apparatus commonly used in games of chance usually played in gambling houses, or by gamblers, *prima facie* evidence (if there is nothing in the attendant circumstances, or in any of the evidence in the case, raising a reasonable doubt to the contrary in the minds of the jury,) that the house, room or place where the same are found is kept for the purpose of gambling. It establishes a rule of evidence. It relieves the State in the absence of anything to create such reasonable doubt from the necessity of introducing further proof, or further evidence to make out a *prima facie* case of the room having been kept for the purpose in question. The fact that such an implement or device has been found in a room, is, when proved, a circumstance going to show that the room is kept for the purpose of gambling, and with the proof of other essential facts, will make out a case against the person charged. Though, independent of the statute, proof of such finding is not *prima facie* evidence that the room or other place is kept for the purpose of gambling, yet it is clear that the statute does not give to the simple fact of such finding, when proved to the satisfaction of the jury, an effect either contrary to its nature, or which it in its nature, has not a tendency to prove. It does, however,

give to it an artificial effect, making it *prima facie* evidence of more than it would be without the statute.

There is no provision of our Constitution that expressly prohibits this exercise of legislative power as to the rules of evidence, nor do we know of any one that is violated in its necessary implications by such an exercise of legislative power. We cannot declare a statute void simply because it may in our opinion be opposed to a spirit supposed to pervade the Constitution, or because we may think it unjust or unwise or impolitic. Cooley's Const. Limitations, (5th Ed.), pp. 199, 202, 205.

Legislation of the character in question as to rules of evidence is not without precedent, nor is its validity a question unadjudicated. In Commonwealth vs. Williams, 6 Gray, 1, Williams was indicted and convicted for being a common seller of spirituous and intoxicating liquors. The statute concerning the manufacture and sale of spirituous and intoxicating liquors under which the indictment was found, provided among other things, that " delivery in or from any store, shop, warehouse, steamboat or other vessel, or any vehicle of any kind, or any building or place other than a dwelling house, shall be deemed *prima facie* evidence of a sale." The trial Judge instructed the jury that the delivery by the defendant of such liquors in his place of business, the same not being a dwelling house, without evidence of payment therefor, was *prima facie* evidence of sale by the defendant upon which they might find a verdict against him, unless explained or controlled by other evidence. It was contended upon appeal before the Supreme Court that the provision was unconstitutional, because it was unreasonable, contrary to the rules and principles of the common law, an encroachment upon the judicial department, and subversive of the right of trial by jury. The court held the statute

to be constitutional, and the view taken of it is that it only prescribes, to a certain extent and under particular circumstances, what legal effect shall be given to particular species of evidence, if it stands entirely alone and is left wholly unexplained ; that this evidence neither conclusively determines the guilt or innocence of the party who is accused, nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. That the purpose and effect of the clause of the statute are to simply give a certain degree of artificial force to a designated fact until such explanations are afforded as to show that it is at least doubtful whether this proposed statutory effect ought to be attributed to it, but the fact itself is still to be shown and established by proof sufficient to convince and satisfy the minds of the jurors. And if this proof is furnished and the delivery of any quantity of spirituous liquor, in a place other than a dwelling house is fully shown, this will not be conclusive against the party charged with having made the sale of it. That making out a *prima facie* case does not change the burden of proof, but is only the result of that amount of evidence which is sufficient to counterbalance the general presumption of innocence and warrant a conviction, if the fact so established be not encountered and controlled by other evidence tending to modify its effect, or to so explain it, as to render the statutory inference from it too uncertain and improbable to be relied upon. That the burden remains continuously on the government to establish the accusation charged in the indictment or information. Commonwealth vs. Kimball, 24 Pick., 373 ; Commonwealth vs. McKee, 1 Gray, 61.

In Commonwealth vs. Wallace, 7 Gray, 222, where the indictment was for an unlawful sale of spirituous and intoxicating liquors it was again contended that the provision in question was unconstitutional, and applied only where a

naked delivery was proved without any accompanying circumstances, and the trial judge was requested *inter alia* to so charge, but he refused and instructed the jury that if there was proved beyond a reasonable doubt a delivery of intoxicating liquor by the defendant from any building or place other than a private dwelling house or its dependencies, it would be *prima facie* evidence of a sale and would warrant a conviction, but that the circumstances under which the delivery was made might rebut the presumption, or the presumption might be rebutted by proof. The Supreme Court overruled the exceptions taken to the instructions given. Commonwealth vs. Rowe, 14 Gray, 47, maintains the same doctrine, and that the burden is on the government to prove the sale beyond a reasonable doubt. See also Holmes vs. Hunt, 122 Mass., 505.

A statute of Maine provided that whenever an unlawful sale of intoxicating liquor is alleged and delivery proved it shall not be necessary to prove a payment, but such delivery shall be " sufficient evidence of sale." This provision was held to be constitutional. " Delivery, in the abrence of all other proof," says the court, " is made sufficient evidence of sale—sufficient when no other proof is offered. It is open to disproof from every source. It may be explained by attendant circumstances. The party delivering is not estopped by the fact of delivery.  *  *  *  The fact of delivery is deemed sufficient, if not explained by the circumstances accompanying the delivery, or if the inference is not negatived by disproof." State vs. Hurley, 54 Me., 562.

In an act for the suppression of intemperance adopted in Connecticut in 1854 it was declared that proof of the finding of the liquor specified in the complaint, in the possession of the accused in any place except his private dwelling

house or dependencies, (or in such dwelling house or dependencies, if the same be a tavern, public eating house, grocery or other place of public resort,) shall be received and acted upon by the court as presumptive evidence that such liquor was kept or held for sale contrary to the provisions of the statute. The Supreme Court of that State held the provision to be constitutional, and that its object was not merely to render such evidence admissible, for without the aid of the statute it might have been received, although other evidence to show such intent would have been necessary. That such proof under the statute was not conclusive of such intent, but merely presumptive evidence of it, and as such proper for the consideration of the jury in connection with other evidence in the case. That the presumption of the innocence of the accused raised under the common law may be taken into consideration by the jury, but that the law does not make it sufficient to rebut the presumption of guilt authorized by the statute to be drawn from the finding of the liquor in the possession of the owner, under the circumstances set forth in the statute. State vs. Cunningham, 25 Conn., 195.

In this case an instruction to the jury that the statute, as matter of law, made evidence of the finding *sufficient proof* of guilt (thereby withdrawing from their consideration the question of intent of the accused as matter of fact) was held erroneous.

The necessity for legislation of the character involved in these adjudications arises from the difficulty to procure without it the evidence necessary to convict in such cases. The same necessity exists in the case to which the provision of the fourth section of our statute applies. As the Legislature has not transcended its powers, it, and not we, are the proper judges of the necessity for and the suitableness

of the remedial provision adopted.   It cannot be said that a person who has kept the apparatus or devices denounced by the statute has not done so with knowledge of the effect which proof of the isolated fact of their being found in a room or house has as to the purpose for which such room or house is kept.   If, notwithstanding the statute, he will still keep them, he must do so under such attendant circumstances as will, of themselves, when proved by either the State or himself, overcome the statutory effect given to proof of the fact of their being found in the absence of such circumstances, or must be otherwise prepared to overcome the effect of the statute.

The case of Divine vs. State of North Carolina, 4 S. E. Reporter, p. 477, has been considered by us, but has not shaken our conclusions.

There was no error in the refusal to give the instructions asked.

(*b.*) The effect of the charge *given* is: If the evidence satisfies the jury that the accused kept the room, or other place in which the gambling implements are proved to have been found, proof of the fact of such implements having been found in the room is *prima facie* evidence that they are used for the purpose of gambling, and the law presumes that they were so used, and the burden of showing that they were not used for gambling purposes devolves upon the accused.

Though the statute has given to proof of finding the effect stated as to the purpose for which the building is kept, it has not given to it the further effect of *prima facie* proof of actual use of these instruments as another and independent evidence of the purpose for which the building is kept.   It has not raised any independent presumptions as to the use of the instruments in aid of a conviction upon a charge for keeping a gaming house or a house or room

for the purpose of gambling. If there is nothing in the testimony of the State or of the defence to control the presumption which the statute authorizes to be drawn by the jury from the proof of the fact of the finding, they may infer from the proof of such fact that the room or house was kept for the purpose of gambling, but if there is any evidence whatever bearing upon the point of whether or not the implements were in fact used for the purposes of gambling, the jury are to consider it and give to it such weight as in their judgment it is naturally entitled to. That they were actually used for the purpose of gambling, the *law* does not itself presume under any circumstances, but whether they were or were not so used, it is for the jury to find as a matter of fact from the testimony, according as it may sustain the one or the other conclusion. The status of the instruments, or the circumstances surrounding them, may be such as to lead any reasonable jury to conclude not only that the building was not kept for purposes of gambling, but that the custody of them by the owner or keeper of such building is entirely foreign to any actual use of them for gambling purposes. The instruction was erroneous and should not have been given.

II. The Judge was requested, but refused, to charge the jury that before they could convict the defendant under this information, they must be satisfied from the evidence, beyond a reasonable doubt, that the defendant had the control or management of the room, that is, that he could regulate and control what was done there, and could have prevented the person or persons from playing, if he had seen fit to do so.

By referring to the first section of the statute, in so far as the same is set out above, it will be seen that its first section expressly provides for the punishment of any person who shall have, keep, exercise or maintain a gaming

room, or a house or other place for the purpose of gaming, whether he do so by "himself," or by "a servant, clerk, agent or in any other manner." The second section of the statute provides: "That any person acting as servant, clerk, agent or employee of any person or persons, in the violation of section one of this act, shall, upon conviction, be punished in the same manner as provided in section one for the punishment of the keeper of a gaming house."

The purpose of section one is to reach the case of a person who, within the meaning of section one, has, keeps, exercises or maintains a gaming house, or a room or house for the purpose of gambling, and such person, as we understand the section, is the one whose establishment or enterprise the gambling house is, whether he operate and manage it in person or by a servant, clerk, agent or in any other manner. He it is that is "the keeper of a gaming house," within the meaning of the statute. The object of the second section is to punish any person who may act as servant, clerk, agent or employee of the person covered by the first section, or, in other words, any person who, as such agent, clerk, servant or employee of the person meant by the first section, may carry on, operate or manage a gaming house, or room, or house for the purpose of gambling. One section is to reach the principal and the other to cover the case of the agent.

The information before us, it is true, is based upon the first section, yet we are unable to see even if it had appeared from the evidence that there was an arrangement between the defendant as principal and his agent, servant, clerk or employee managing the business for him, by which, as one of the terms of his employment, the latter was to regulate or control the operation of the business in the room, and to use his own judgment as to preventing persons from playing, that proof of such an arrangement

would, of itself, either have prevented a conviction of a principal under the first section, or would defeat the prosecution, in case of a charge against one as an agent under the second section. There was no error in the refusal to give this instruction.

III. The Judge was also asked to charge that the jury must be satisfied beyond a reasonable doubt from the evidence in the case, independent of the above stated fourth section, that the defendant was engaged in keeping, exercising or maintaining [a room for the purpose of gambling] at the place charged in the information, either in person, by himself, servant, clerk, agent or any other manner; and, if they were not also satisfied with the evidence beyond a reasonable doubt that the defendant was the person who had control of the room and exercised such dominion over it that he could at any time have stopped the game, they must acquit.

The latter clause of this proposed instruction is disposed of by what is said as to the one discussed immediately above. The other clause of it is a correct proposition of law, and had it been presented as a separate instruction, should have been given. We understand the meaning of this instruction to be that the jury must be satisfied from the evidence that the defendant was guilty of keeping and maintaining a room for the purpose of gambling, under the first section of the act, and that the legal effect of section four was not to render inapplicable to the character of cases covered by it the general rule that the jury must be satisfied beyond a reasonable doubt, upon a consideration of the whole evidence, that the defendant kept, exercised and maintained the gambling room, as charged. As, however, the entire instruction, in the form presented, also contained an incorrect proposition of law, there was, as has so often been held by this court, no error in the refusal to give it.

It may be too that the charge given, as set out in the next subdivision of this opinion, was sufficient to cover, as to proof beyond a reasonable doubt, considered alone.

IV. Another instruction refused by the court was as follows: The law in this case presumes, independent of section 4 of the statute in question, that every man is innocent, and that his place of business is conducted and used for legal purposes only, and this legal presumption of innocence is to be regarded by the jury in every case as a matter of evidence to the benefit of which the defendant is entitled.

The Judge had already of his own motion charged the jury that " the law presumes every man innocent until he is proven guilty by proper legal evidence, and if you have any reasonable doubt as to the guilt of the defendant, arising from the evidence, you shall acquit him," and in addition to this, that " a reasonable doubt is not a capricious or whimsical doubt, but one arising naturally from the testimony, and if the jury have such doubt as to the guilt of the defendant he is entitled to the benefit of the doubt and should be acquitted."

The instruction given was a correct exposition of the law. Its terms and meaning are such as to apply to the defendant the presumption of innocence of the offence charged, in all its features, and they are broad enough to cover the use of his place of business specially mentioned in the charge requested. As to the special language of the instruction asked, that "this presumption of innocence is to be regarded by the jury in every case as a matter of evidence to the benefit of which the defendant is entitled," we are of the opinion that there was no error in the failure of the Judge to use it. It is true that Mr. Greenleaf uses the same language in one place in sec. 34, vol. 1, of his work

on Evidence, and refers to State vs. Pike, 49 N. H., 398. Considering the whole of section 34 and the New Hampshire case, we see nothing in either that makes the use of the language in question essential or indispensable, nor do we think its use would have strengthened the instruction given. The law presumes, according to all of the authorities, every man innocent of any crime with which he may be charged until and unless the testimony shows beyond a reasonable doubt that he is guilty of it. The charge is in the usual language and is sufficient, and there was consequently no error in the refusal to give the one asked by the defendant's counsel.

V. There are in the record instructions which were asked involving the constitutionality of the fifth and sixth sections of the statute.

The former of these sections makes it the duty of any Sheriff or other police officer, when any such implements are found in any room or place used for the purpose of gaming, " to seize the same and have them publicly destroyed in the street in the presence of witnesses." The other section provides that if any Sheriff, City Marshal or Chief of Police shall have good reason to believe that gambling is being carried on in any house, or other place mentioned in the first section of the act, he may enter the same forcibly, if necessary, and without written warrant, and may arrest any person or persons violating this act.

Neither of these sections is in any wise practically involved in this case. Even admitting that they are unconstitutional, the validity of the first, second and fourth sections is not in the least impaired by such fact. The former and latter sections are entirely independent of each other, and there is no room for the contention that the legislature would not have adopted the first, second and fourth with-

out the fifth and sixth, or that they are at all dependent upon each other.

VI. The only point remaining for consideration is whether or not the error in the charge given to the jury and discussed in the first subdivision of this opinion is, considering the testimony, one from which it can be claimed that the defendant in error has sustained any injury.

Whenever the proof of the finding of instruments in the room, or other place, is clear, and there is nothing in any part of the testimony adduced on the trial, by either the State or the defendant, of a nature to indicate in the least that such instruments were not used for gambling purposes, there is no reason why the jury should not conclude, as authorized by the statute, that the building was kept for the purpose of gambling. There is certainly nothing in the testimony before us of the character indicated. No inference other than that the room was used for the purpose of gambling is tenable. There is not a circumstance or a word tending towards the suggestion or idea that the gambling instruments were not kept for use or actually used. It seems to us beyond doubt that the defendant could not have sustained any injury from the charge. That he was the keeper of, or maintained, and exercised the room, is sufficiently proved; that it was he and no one else, is the only reasonable conclusion. The State's case is made out beyond a reasonable doubt and the judgment should in our opinion be affirmed. Whart. Cr. Pl. & Pr., Sec. 796, Note 3; Brown vs. The State, 18 Fla., 472.

The judgment is affirmed.