THOMAS A. JOHNSTON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An appellate court will not disturb the verdict of a jury as being contrary to the evidence when it is not contrary thereto but is sustained by it.

2. Even admitting that there may be an error in one of the charges, the verdict will not be disturbed on account of it where it is clear that such error is corrected by other charges on the same point, and particularly where the testimony is such as to pre-clude the conclusion that the party is not guilty of the offense of which he has been convicted.

3. An appellate court may refuse to notice points urged in the brief of counsel for a plaintiff in error, which are not covered by the assignment of errors.

4. The striking out of immaterial testimony by the court is not error.

5. An objection not made in the trial court as to the admissibility of evidence can not be urged in the appellate court.

Writ of Error to the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*E. K. Foster* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

(Judge Malone, of the Second Judicial Circuit, sat in the place of Mr. Justice Taylor, who was disqualified.)

MALONE, Circuit Judge :

At the Fall term, 1890, of the Circuit Court for Orange county, in the Seventh Judicial Circuit, Thomas A. Johnston, the plaintiff in error, was tried upon an indictment charging him with the murder of one William Lee, and found guilty of manslaughter in the second degree, by a petit jury. He then moved the court for a new trial; but the court denied this motion and sentenced him to imprisonment in the penitentiary for the period of five years.

Thereupon he removed said suit by writ of error to this court for review, and assigned the following errors, viz:

1. That the verdict was contrary to the evidence.

2. That the court erred in giving charge No. 4.

A review of the testimony in this case will be necessary in order to determine whether these assignments of error are well taken. This testimony is very voluminous and we will not undertake to repeat it all, but will repeat the substance of it only, which is as follows, viz:

On the morning of the 9th day of May, 1890, Thomas A. Johnston, the plaintiff in error, and William Lee, the deceased, met near Yates' house, in the road leading from Orlando to Oakland in Orange county. Both men were riding on horseback, at a moderate gait, the former going towards Oakland, and the latter towards Orlando. When within about twenty-five yards of each other both checked their horses to a walk and just as they passed each other, Johnston suddenly turned his horse, presented a 38 Smith & Wesson pistol to Lee's back and fired, shooting him in the back. The pistol was held so close to Lee when it fired off that it burned his clothing. Lee then fled in the direction of Orlando, hollering "Oh! Lord," his horse running at full speed but keeping in the road. Johnston, pistol in hand, urged his horse to a run also, and pursued Lee and again shot him in the back while he was fleeing. After this second shot Lee fell from his

horse into the road dead, and then Johnston checked his horse before he reached the corpse and turned and rode off in the opposite direction to Dink Patrick's; and afterwards during the same morning returned to Orlando and surrendered himself to Mr. Anderson, the sheriff of Orange county, and at the same time informed him that he had shot Will Lee in the back with a pistol, which he exhibited, and killed him.

It appears that the deceased had already threatened to kill Johnston and that these threats had been communicated to Johnston a short time before the homicide.

The statement of Johnston himself varies very little from this testimony. His statement about his meeting the deceased in the road, and the circumstances connected with the homicide is the following, viz : "I was right up to Yates' house and when I looked up I met Will Lee, he was close to me, I don't know whether he came around the corner of the fence or where, I never saw him until he was right there and he said 'God damn you, I have got you now,' and by that time he was in about three or four feet of me, and he spurred his horse up towards me and struck at me and missed me, just brushing my *left* shoulder, then I reached and jerked my pistol out and my horse sorter turned and I shot him right about there (indicating), then I turned my horse around and he started to run and my horse did too, and I shot at him again as he went off and both horses was running and he fell off."

36

The plaintiff in error contends that the verdict was contrary to the evidence, because this testimony proved that the homicide was justifiable and did not prove manslaughter in the second degree.

We do not think that this contention is tenable. The testimony does not, in our opinion, prove a case of justifiable homicide. It is true that it appears from the testimony that the deceased had threatened to take Johnston's life, but it also appears that at the time he was shot and killed the deceased did nothing that evinced an immediate design to execute said threats. Indeed, there is a total absence of any testimony whatever showing any hostile demonstration, or overt act of attack on the part of the deceased, against Johnston that indicated an immediate design to take Johnston's life, or to do him great personal injury. Besides it will be observed that Johnston himself did not state that he apprehended or had apparent reason to apprehend, that the deceased designed to kill him, or to do him great personal injury, and that there was imminent danger of said design being accomplished, and that he slew the deceased to prevent it. It is true that Johnston stated that the deceased spurred his horse up towards him and struck at him, but missed him, just brushing his left shoulder ; but does not state what the deceased struck at him with and we are left to infer that it was his *left* hand.

Now it will be observed that Johnston did not shoot the deceased as he approached him, but waited until the deceased had passed him, then suddenly turned

and shot the deceased in the back without any warning whatever ; and when the deceased fled after receiving the bullet in his back, he pursued him and shot him in the back again and continued the pursuit until the deceased fell from his horse into the road dead.

It is evident that when Johnston fired those fatal shots, he had no apparent reasonable ground to apprehend that the deceased designed to kill him, or to do him great personal injury, and that there was imminent danger of such design being accomplished.

We think that this homicide was without justification, and was wholly unnecessary. The verdict, therefore, in our opinion, is not contrary to the evidence, but sustained by it.   Under these circumstances this court will not disturb this verdict.   Hicks vs. State, 25 Fla., 535 ; Anderson vs. State, 24 Fla., 139 ; Robertson vs. State, 24 Fla., 358 ; Huling vs. Fla. Sav. Bank, 19 Fla., 19 ; John D. C. vs. State, 16 Fla., 554 ; Mayo vs. Hynote, 16 Fla., 673 ; Sherman vs. State, 17 Fla., 888.

We will now consider the second assignment of error, viz: That the court erred in giving charge No. 4 which is in the following words, viz : " A person has the right to defend himself against an attack by another and to kill such other when there is reasonable ground to apprehend a design on the part of such other person to commit a felony upon him or to do him some great personal injury, and there shall be imminent danger of such design being accomplished.   It must appear that the assault was imminently perilous or

that it would appear to be imminently perilous to a reasonable man situated as the party assaulted was situated, and unless there be a plain or apparently plain manifestation of a felonious intent, or intent to do great personal injury, no assault will justify killing the assailant.''

The plaintiff in error has failed to point out to us any error in this part of the charge. But even if error had been pointed out therein, not only is it corrected by the other and full charges given, but it would be harmless, and would not defeat the verdict, because the testimony is such as to preclude the conclusion that the killing was excusable or justifiable, and sustains the verdict. Wooten vs. State, 24 Fla., 335; Brown vs. State, 18 Fla., 472.

It is urged in the brief of counsel for plaintiff in error that there was error in excluding certain testimony of a witness named Nobles, relating to the statements of the deceased as to his intention to gather the prisoner's cattle ; and also that there was error in permitting a horse other than that ridden by Lee to be ridden across a bridge at the view of the scene of the killing, taken at the request of the prisoner, by the court and jury. As these points are not included in the assignment of errors, we are not required to notice them. We will, however, say that the testimony of Nobles is entirely immaterial, and could have had no effect upon the conclusion reached by the jury; and

that the objection urged here as to the horse was not made at the time of the riding across the bridge at the view.

The judgment is affirmed.