HARRISON KING, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. In a prosecution for murder, an instruction asserting the proposition that, in order to justify a killing under a claim of self defense, the slayer must have resorted to all reasonable means at his command, consistent with his own safety to

avoid the necessity of taking human life, is not erroneous, because not modified so as to·bring, or limit such means to the knowledge of the defendant, especially in view of other instructions conveying this meaning.

2.  It is proper for the court to refuse to give an instruction substantially covered by other instructions already given.

3.  A necessity brought about by a party who acts under its compulsion cannot be relied upon to justify his conduct. The aggressor in a personal difficulty, and not reasonably free from fault, cannot acquit himself of liability for its consequences on the ground of self defense, unless after having begun the difficulty, he in good faith declines the combat and his adversary has become the aggressor.

4.  Evidence examined and found sufficient to show that the defendant was the aggressor and not reasonably free from fault, and that he was not justified in taking the life of the deceased.

This case was decided by Division A.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

C. L. Wilson and Price & Watson, for plaintiff in error;

W. H. Ellis, Attorney General, for the state.

PARKHILL, J.—The plaintiff in error was indicted in the circuit court for Jackson county for the crime of murder in the first degree. He was convicted of manslaughter and sentenced to a term of ten years in the state prison. From this judgment and sentence he seeks relief here by writ of error.

The first assignment of error questions the correctness of the following instruction given by the court to the jury, at the request of the state: "In order to justify a killing under a claim of self defense, the slayer must be reasonably free from fault in bringing on the difficulty. He must not have been the intentional aggressor in bringing on the difficulty, and he must have resorted to all reasonable means at his command, consistent with his own safety, to avoid the necessity of taking human life. If the defendant was the intentional aggressor, or if the defendant was not reasonably free from fault in bringing on the difficulty, or if there were any other reasonable means at defendant's command, consistent with his own safety, to which the defendant could have resorted instead of killing the deceased, if he did kill him, then he could not justify his act on the ground of self defense, and you should return a verdict of guilty as to some degree of unlawful homicide."

In Peadon v. State, 46 Fla. 124, text 135, 35 South. Rep. 204, the court said it was not error to add to a charge on self defense the following proviso: "Provided Peadon was not the aggressor in bringing on the difficulty, and used all reasonable means in his power consistent with his own safety to avoid the danger, and to avert the necessity of taking Mercer's life, and provided he did not take Mercer's life after all real or apparent necessity for doing so had ceased." The expression, "means at his command," used in the charge objected to, is equivalent to the expression "means in his power," used in the charge in the Peadon case. See also Stafford v. State, 50 Fla. 134, 39 South. Rep. 106; Snelling v. State, 49 Fla. 34, 37 South. Rep. 917; Danford v. State, 53 Fla. 4, 43 South. Rep. 593.

It is urged here that this charge is objectionable because "it makes it imperative upon the defendant, that

before he could justify upon the grounds of self defense, if he, consistent with his own safety, could have fled from his adversary and thereby avoided the necessity of killing Davis, it was his duty to do so; and if he did not do so, he would be guilty of some degree of unlawful homicide." This objection is removed by a charge given by the court at the request of defendant as follows: "A defendant reasonably free from fault is under no duty to retreat from an assailant, where he reasonably believes that to retreat would increase his peril."

It is said the charge is objectionable for the reason that the part of the charge which states that the defendant could not justify, unless he has resorted to all reasonable means at his command, is not modified so as to bring or limit such means *to the knowledge of the defendant.* It is argued that "the charge is broad and general, and and instructs the jury virtually that it makes no difference whether the defendant knew there were means, consistent with his own safety, or not; yet, if, as a matter of fact, such means did exist and the defendant failed to resort to such means, whether he knew that they did exist or not, then he would be guilty of some degree of unlawful homicide." We need not enter upon an extended discussion of these objections, because they have been removed by special instructions given by the court at the request of defendant as follows: "2. If you believe from the evidence that the defendant shot and killed Davis in a difficulty in which the defendant was not the aggressor, and which was not brought about by the fault of the defendant, that at the time of the shooting Davis acted in such a manner as to cause the defendant to believe, and he did believe, that he was in present immediate danger of suffering death or great bodily harm at the hands of Davis, and shot him by reason of such belief, and a reason-

ably prudent and cautious man, situated as the defendant was, *seeing what he saw, and knowing what he knew,* would have believed and shot as the defendant did, then the defendant would be justified in his act on the ground of self defense, and it would be your duty to find him not guilty, even though you believed from the evidence that he was in no actual danger at the hands of Davis."

"4. If a person is assaulted by another, and is himself without fault in bringing on the assault, and the assault is of such a nature as reasonably to cause him to believe himself in present imminent danger of death or great bodily harm at the hands of his assailant, and he kills his assailant by reason of such belief in order to protect himself from such danger, he is justified; and if you believe from the evidence in this case, that the defendant was assaulted by the deceased without fault of the defendant, in such a manner as to cause the defendant as a reasonable, prudent and cautious man to believe, and he did believe, that he was in present imminent danger of losing his life or suffering great bodily harm at the hands of the deceased, and he shot and killed him while so believing in order to protect himself from such danger, he would be justified in his act and it would be your duty to find him not guilty."

"5. If the jury believes from the evidence in this case that there is a reasonable doubt as to whether the defendant at the time of shooting the deceased, if he did shoot him, was under reasonable apprehension that he was in imminent danger of losing his life at the hands of the deceased, and you believe that the defendant was not the aggressor in bringing on the difficulty, then you must acquit the defendant."

"6. ·If you believe from the evidence that the defendant shot and killed the deceased in a difficulty under

such circumstances as that a reasonable, prudent and cautious man would have believed such shooting necessary to save his own life, and that the defendant so believed and shot by reason of such belief, and you have a reasonable doubt on the point as to whether the defendant was reasonably free from fault in bringing on the difficulty, it would then be your duty to acquit the defendant."

There was no error in giving the special instruction asked for by the state in connection with the special instructions asked for by the defendant.

The second assignment of error is abandoned.

The third assignment of error is founded upon the refusal of the court to give the following special instruction asked for by defendant: "A man has the same right under the law to defend himself from the appearance of danger, and to the same extent, that he has against real danger, if, as a reasonably prudent and cautious man he believes the danger to be real at the time of defending against it."

This instruction was properly refused because it was substantially covered by other instructions given by the court, and because of itself it is subject to criticism.

The fourth assignment of error questions the sufficiency of the evidence to support the verdict. We have read and considered the evidence with great care. Able counsel for the defendant attempt to justify the act of the defendant in taking the life of Ben. Davis, the deceased, upon the ground of self defense. The law is well settled, however, that the aggressor in a personal difficulty—one not reasonably free from fault, cannot be heard to acquit himself of liability for its consequences on the ground of self defense. Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Padgett v. State, 40 Fla. 451, 24 South. Rep. 145; Mercer v. State, 41 Fla. 279, 26 South. Rep. 317; Kennard v. State, 42 Fla.

581, 28 South. Rep. 858; Marlow v. State, 49 Fla. 7, 38 South. Rep. 653; Sylvester v. State, 46 Fla. 166, 35 South. Rep. 142; Bassett v. State, 44 Fla. 2, 33 South. Rep. 262; Cartwright v. Nash, 14 Tex. App. 486.

In Mercer v. State, *supra,* the court approves this statement of the law: "A necessity brought about by parties who act under its compulsion can not be relied upon to justify their conduct. The aggressors in a personal difficulty, and not reasonably free from fault cannot acquit themselves of liability for its consequences on the ground of self defense, unless after having begun the difficulty, they in good faith decline the combat and their adversary had become the aggressor."

The witness, Maloy, testified: "I did hear him (King) say about a month or maybe more before Davis was killed, that he would whip him. He said he had gone hunting and Davis had locked up the house where he had left some stuff in it and that if Davis dragged with him any more, he would give him a good whipping, or Davis would have him to whip." Upon the question of who was the aggressor and whether the defendant was at fault in bringing on the difficulty, McDaniel, a witness for the defendant, testified: "Mr. Davis went to the sugar mill I think, and the young man, if I mistake not, (referring to Hartsfield's son), had passed the sugar mill. As I came back Mr. Davis asked King if he knew what became of the beer. It seems as if there had been some cane beer there. Mr. Davis said that King should not have taken it without giving him a part of it. Mr. King told him that he did not know. Told him that the time had not come for him to get any of it. He did not know whether he would get any of it or not. They had some words, but I did not understand it. It was none of my business. I did not pay any special attention. I thought they were giving all the satisfaction necessary. I did not

hear but one or two words spoken then. *The next thing* I heard, *King said: 'Shuck yourself and I will give you a thrashing.'* I looked back and as I looked back I heard what was said. I heard Davis say, 'you son of a bitch, I am not afraid.'" Then the witness testified that Davis advanced with his hands in his pockets and he thought deceased was going to shoot, and witness jumped to one side. "When I looked back Davis had his hand in his left back pocket and right hand behind him. King's gun at that time was lying on the little pile of wood and his coat was also lying there. When I looked back I was sure they were going to shoot. I jumped to one side out of the way. I did not see the gun fire. I heard the gun fire. When I looked back again Davis was falling."

Robert Hartsfield, a witness for the state, testified: "I heard Mr. Davis say something about cane beer. He asked what became of it. Mr. King told him that he got it. There were a few words spoken, Mr. Davis asked Mr. King where was the beer. King told him he got it. They had a few words. I heard Mr. King say 'Damn it, can't you wait?' * * * Mr. King said something about pulling off his coat or something, but did not say why. Some little something was said about fighting. Mr. King said he would fight it out, and pulled off his coat and laid it down." King and Davis were cursing.

Even though the deceased was advancing upon the defendant in a threatening manner so that the defendant thought that the deceased was about to draw a pistol and shoot him, yet the jury could very properly determine from the evidence that the necessity for the defendant to shoot was brought about by him, that he was the aggressor and not reasonably free from fault, and that he was not justified in taking the life of the deceased. This was a question of fact to be determined

by the jury from the evidence before them, and the charge of the court covering this phase of the case was full and fair, the sixth special instruction already quoted declaring that it would be the duty of the jury to acquit the defendant if they had a reasonable doubt as to whether the defendant was reasonably free from fault. The defendant had a fair trial. A careful trial judge approved the verdict, and we cannot disturb it on the evidence embodied in the record.

The judgment is affirmed.

TAYLOR and HOCKER, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD JJ., concur in the opinion.