CLAUD DOKE, *Plaintiff in Error*, v. THE STATE OF FLOR-
IDA, *Defendant in Error*.

## Opinion filed May 18, 1916.

1. In a prosecution for murder the defense of self defense is not sustained where it appears that the defendant killed the deceased before using all reasonable means in his power and consistent with his own safety to avoid the danger and avert the necessity of taking the life of the deceased.

2. Evidence examined and found sufficient to support a verdict of manslaughter.

Writ of Error to Circuit Court, Alachua County; Jas. T. Wills, Judge.

Judgment affirmed.

*W. S. Broome* and *D. M. Buie*, for Plaintiff in Error;

*T. F. West*, Attorney General, and *C. O. Andrews*, Assistant, for the State.

ELLIS, J.—Claud Doke was convicted of manslaughter in the Circuit Court for Alachua County upon an indictment charging him with the murder of W. Lewis

Abbott, and comes here upon writ of error complaining that the evidence is not sufficient to support the verdict.

Claud Doke was indebted to W. Lewis Abbott in the sum of ten dollars for the purchase of an old buggy and was unable to pay. Abbott was persistent in his efforts to collect the debt from Doke notwithstanding the latter's repeated statements to Abbott that he was unable to pay.

About eight or ten months before Abbott was killed Doke suffered from an attack of typhoid fever which confined him to his bed for about two and a half months, which left him in a very weak physical condition, and a very greatly swollen leg which made it necessary for him to use crutches for a long while after he was able to leave his room.

On the day of the difficulty in which Abbott was killed Doke had abandoned his crutches, but his leg was still swollen and he was not in a normal state of health according to the physician who had attended him during his illness. According to the testimony of the defendant below and other witnesses, the attitude of Abbott toward Doke was hostile, overbearing and insulting to the extent perhaps of intimidating the latter who on more than one occasion avoided him.

Abbott had threatened Doke with violence if the latter failed to pay the debt within a certain time, and on the morning of the day in which the former was killed he said to O. F. Moore, a deputy sheriff, that he was going out to Doke's place and if Doke did not pay the debt Abbott would have the ten dollars or "that much hide," and to another witness, Henry Money, a barber, he said that Doke owed him ten dollars and "I am going to have it or kill him."

Upon the day of the fatal encounter between these two men, Abbott and Doke, the latter was moving his

family and household goods from the place where he had been living, to Trenton. Two wagon loads of household goods had been taken away, and Claud Doke and Gene Doke, a cousin of the defendant, the only person it seems other than the two participants who was present and witnessed the shooting, had returned for the third load. Claud Doke had borrowed a shotgun from a neighbor and had carried it with him on at least one of the two trips and had returned with it in his possession when he and his cousin came for the third load. It seems that Claud Doke had said to his uncle, R. L. Horn, about a month before, that he owed Abbott $10.00 and wasn't able to pay him, and wasn't going to pay him; that he didn't want Abbott to bother him, because if he did somebody might get hurt, and about two weeks after this conversation Abbott said to the same witness that Doke owed Abbott for a buggy and "He better pay me or he will be sorry he didn't." Abbott's threats, however, seem not to have been communicated to Doke nor had the latter's words been carried to Abbott. This was the situation as well as we can ascertain from the record, when Claud Doke and his cousin Gene Doke returned to the former's house for the third load of household furniture. Abbott and two other men were sitting on the porch. There was some evidence to the effect that Abbott had his knife out "whittling." The other two men seem to have left before the difficulty occurred. Neither Doke nor Abbott spoke to each other. The wagon was loaded and the two Dokes were preparing to leave. Claud Doke had the gun in his hand. Abbott arose from where he was sitting on the porch of the house and came to where the Dokes were standing and asked Claud Doke for a settlement of the debt. Doke replied that he had nothing "to settle with." Abbott asked when he would

have it, and Doke replied "I don't know, as soon as I can collect it or get it." Whereupon Abbott observed that he didn't see why "Claud" should be running and dodging from him, that "it is not treating me right." According to the witness Gene Doke "Claud jumped up on the shed with the gun and he says, 'whoever says I have been dodging and running from you tells a G— d— lie.' Then Abbott made for him. He run just the width of the wagon and jumped down on the ground and came around by the horses' head and run, I suppose twenty steps to where he was shot." When Doke jumped upon the shed, he held the gun in his hands unbreached. When Abbott started toward Doke the latter ran "across the width of the wagon and Abbott right behind him." They passed Gene Doke near the horses' head, the gun was still unbreached. Gene Doke attempted to take the gun away from Claud Doke, who jumped to one side, and ran about twenty steps, with Abbott close behind him, when Doke fired upon Abbott inflicting a wound in the lower part of the latter's abdomen, from which he died within two hours. When he fell he exclaimed "Gene he has killed me." Claud Doke said "I know it, and it may break my neck, but I can't help it." When the body of Abbott was being prepared for burial his knife was found in his trousers pocket partly open as if some trash had accumulated under the blade. Gene Doke did not see a knife in Abbott's hand when the latter ran toward Claud Doke, although he was in a position that would have enabled him to see it if Abbott had had it in his hand. Claud Doke, however, said that Abbott had the knife in his hand and attempted to cut Doke just before he fired the shot. The jury found the defendant guilty of manslaughter and he was sentenced to

be confined in the State prison at hard labor for eighteen months.

The plaintiff in error insists that the circumstances under which Claud Doke killed the deceased, clearly showed that Doke was justifiable, upon the theory of self defense, in taking the life of the deceased.

That the defendant was where he had a right to be there can be no question; but whether it be considered that he was within his own enclosure or not the taking of the life of the deceased was not justified unless the defendant used all reasonable means in his power and consistent with his own safety to avoid the danger and avert the necessity of killing the deceased.   See Owens v. State, 64 Fla. 383, 60 South. Rep. 340; Stafford v. State, 50 Fla. 134, 39 South. Rep. 106; Danford v. State, 53 Fla. 4, 43 South. Rep. 593; King v. State, 54 Fla. 47, 44 South. Rep. 941; Peadon v. State, 46 Fla. 124, 35 South. Rep. 204.

In the Danford case, *supra,* the court said the principle, that it is the duty of one to avoid a difficulty he has reason to believe is imminent, if he may do so without apparently exposing himself to death or great bodily harm, cannot be denied, and that whatever qualification it may have will depend upon the circumstances of each particular case.   That a man violently assaulted in his own house or on his own premises near his house is not obliged to retreat, but may stand his ground and use such force as may appear to him as a cautious and prudent man to be necessary to save his life or to save himself from great bodily harm.   In cases where a combat is mutually sought, the duty of retreating seems to apply to both parties, for both being in the wrong, neither can right himself without retreating.   And in the case of Ballard v. State, 31 Fla. 266, 12 South. Rep. 865, the

court said a defendant may as a reasonable man have believed that he was in danger of losing his life, or of incurring bodily harm, and yet if he brought about the necessity himself without being reasonably free from fault, the killing would not be justifiable or excusable. See Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Padgett v. State, 40 Fla. 451, 24 South. Rep. 145.

We think that the question of the defendant's freedom from fault and the reasonableness of his belief under the circumstances that he was in danger of death, or great bodily harm from the deceased, was peculiarly for the jury to determine. The accused may have had and entertained some resentment against the deceased for the latter's persistent insulting and annoying efforts to collect the debt which the defendant owed him; carrying the gun backward and forward from his own home to the new one to which he was moving may have been a precautionary measure against his meeting with the deceased and to have in his possession the means wherewith to hurt somebody if the deceased "bothered" him. The possession of the gun with the ammunition ready at hand may have emboldened him to use the violent language toward the deceased which he used; he certainly did not decline a fight except by loading his gun after the deceased spoke to him, and after replying in language which indicated no fear of the deceased under the circumstances, and which was calculated to precipitate a difficulty which he must have believed was imminent, turned and ran a short distance. It is true he fled apparently from the deceased, but he turned and fired at close range upon the deceased who was probably unarmed and approaching upon the defendant's invitation, which at least was implied. Under these circumstances we cannot say that the accused was free from fault in bringing on the difficulty,

that the jury had no evidence before it that the unfortunate affair was unnecessary and that the accused reasonably believed that he was in imminent danger of death or great harm and used all reasonable means in his power to avoid the necessity of taking life. So the judgment is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.