W. H. YOUNG, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed March 15, 1923.

1. The right to peremptory challenges to persons tendered as jurors in a criminal case is one that may be waived, but to wrongfully require the defendant to exhaust his peremptory challenges is harmful error.

2. It is the duty of a party complaining in an appellate court of the judgment of a lower court that it was erroneous and was obtained by the denial to him of rights to which he was entitled, to make such clearly to appear to the court to which he appeals.

3. If it is shown by the record that a venireman who is qualified to serve upon a jury in a criminal case, because he is not impartial, is tendered by the State and a challenge by defendant for cause is overruled, the record disclosing that the juror did not serve and defendant exhausted his quota of peremptory challenges, reversible error is not made to appear.

4. In order for the defendant in a criminal case who has been wrongfully required to use one of his peremptory challenges of proffered jurors to make the error so committed appear to be harmful or reversible it is necessary to show that the juror served and defendant's full quota of challenges had been exhausted or that he was required to use one of his peremptory challenges upon the objectionable person and his full quota of challenges was exhausted.

5. The presumption obtains in favor of the correctness of the judgment of the trial court that a jury selected and drawn to serve in a criminal case was an impartial one.

6. Section 2723 Revised General Statutes providing for the use of former bills of exceptions as evidence under conditions named was amended by Chapter 8572 Laws of 1921 so as to prohibit the use of former bills of exceptions as evidence in criminal cases.

7. It is harmful error to admit in evidence over the defendant's objection the transcribed stenographic notes of the testimony of a witness for the State at a former trial of the defendant upon the same indictment and such error is not cured by subsequently producing the witness and causing him to give his testimony in person although there is only slight variance between the stenographic report and the witnesses' testimony on the second trial.

8. A map, plan or picture whether made by the hand of man or the process of photography if verified as a true representation of the subject about which testimony is offered is admissible in evidence to assist the jury in understanding the case.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment reversed.

*Pat Whitaker* and *H. Blaine Peacock,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant, for the State.

ELLIS, J.—In June, 1921, Herman Young was indicted for the murder of Henry B. Driggers. The offense was alleged to have been committed in Hilsborough County on April 2nd, 1921. Hallie J. H. Ellis, Granville Ellis and William H. Young, the plaintiff in error, were charged in the indictment to have been present aiding and abetting the commission of the murder. The plaintiff in error pleaded not guilty. A severance was granted upon motion of the State Attorney and Young was placed on trial April 25th, 1922.

The jury returned a verdict of manslaughter and judgment and sentence were entered against him. He seeks to reverse the judgment on writ of error.

At the very threshold of the case the point is presented that the plaintiff in error was denied a fair trial because a certain venireman called to serve as a juror was held by the court to be qualified as an impartial person over the defendant's objection that it appeared from the answers of the venireman, to the questions propounded by the court and its authority as to his qualifications, that he was not an impartial person, and therefore not such a person as is contemplated by the Constitution shall serve as a juror in the trial of a felony.

The venireman, who was named T. T. Graham, admitted upon his *voir dire* examination that he had "formed or expressed" an opinion as to the guilt or innocence of the accused. That it would require evidence to remove the

opinion he had formed, which he would hold to unless the evidence changed it. He could not say whether his opinion, formed from newspaper articles purporting to give an account of the transaction, would readily yield to the evidence adduced upon the trial. He afterwards said it would not yield readily to the evidence, that is, "easily" yield. That his opinion was "fixed" so far as he knew. That he was "open to arbitration." He explained that phrase as meaning "open to conviction if he was wrong." That he would "have to be shown." That his position would be an embarrassing one. The proposed juror's answers appeared to vacillate between bias and the absence of it, certainty and the lack of it as to the character of his opinion, whether it was fixed or not, would or would not yield easily or readily to the evidence according as he was questioned by the court, the State Attorney or the defendant's counsel.

A person so uncertain of his mental attitude toward another on trial upon a grave and serious charge; so doubtful as to whether a prejudgment by him would influence his deliberations as a juror; who forms an opinion concerning the innocence or guilt of the accused upon a newspaper account of the alleged crime; whose opinion is fixed and would require to be "shown" that such opinion is wrong cannot be said to be an impartial juror should he be chosen to serve as one.

But the man did not serve as a juror nor does the record show that the defendant exhausted one of his peremptory challenges in excluding the venireman from the panel. But the record does show that the defendant exhausted his full quota of ten peremptory challenges.

The proposed juror was challenged for cause by the defendant and the challenge was not sustained by the court

who held that the venireman was qualified. Exception was duly taken to this ruling and it is the basis of the first assignment of error.

The record does not disclose that the twelve persons who served as jurors in the case were partial nor that any one of them was not an impartial juror. So far as the record discloses to the contrary the defendant obtained a trial by an impartial jury.

The right secured by the statute to a person on trial for a capital offence to challenge peremptorily ten persons tendered by the State as jurors to try the case, is a right that the defendant may waive. He is not bound to exhaust his full quota of challenges. The purpose is that there may be full assurance of the constitutional guaranty of a trial by an impartial jury. If the defendant is wrongfully required to use one of these ten challenges upon a person tendered as a juror, who should have been excused for cause, and exhausts his full quota of challenges harmful error is undoubtedly committed. See Mathis v. State, 45 Fla. 46, 34 South. Rep. 287. But if the person tendered is held to be qualified but does not serve and the record does not show that the defendant used one of his peremptory challenges, all of which were exhausted, in excusing the prejudiced venireman, can it be said that harmful error has been made to appear? See Green v. State, 40 Fla. 191, 23 South. Rep. 851.

It is the duty of a party complaining in an appellate court of the judgment of a lower court that it was erroneous and was obtained by the denial to him of rights to which he was entitled, to make such error clearly appear to the court to which he appeals, if in truth such error exists. All presumptions are in favor of the correctness of the judgment sought to be set aside. The right to

challenge veniremen peremptorily is a right to reject.  If a venireman who is unqualified because not impartial is tendered by the State, but does not serve as a juror, it does not follow that the defendant challenged him peremptorily, even though it does appear that the defendant exhausted his quota of peremptory challenges.  To hold otherwise it would have to be presumed in aid of the contention that the judgment was erroneous, that the objectionable venireman was challenged by the defendant, who was thereby wrongfully obliged to use a peremptory challenge.

But that presumption cannot be invoked.  The error, if any exists rendering the judgment bad, consists not in overruling the challenge for cause, but in overruling the challenge for cause and permitting the juror to serve or forcing the defendant to use one of his peremptory challenges and exhausting by him of his full quota of challenges when the jury is selected.  Unless that is the situation, no injury resulted from the court's ruling.  There was no harmful error. .

This view is in harmony with the decisions of this court, none of which however decide the exact point, that the defendant must use one of his peremptory challenges in excusing the objectionable venireman and must have exhausted his full quota of such challenges when the jury is finally selected.

From anything appearing in the record to the contrary, the defendant had exhausted his peremptory challenges when the objectionable veniremen was tendered.  If such was the case the defendant was not injured by the court's ruling because the veniremen did not in fact serve.  The record does not show that the jury which was finally selected and tried the issue was incompetent or biased. In the absence of such showing the presumption exists

12—Vol. 85.

that it was an impartial jury and that is all the defendant can demand if he has not been compelled to exhaust one of his peremptory challenges in excusing a venireman unqualified to serve and has. no unused peremptory challenges left when the panel is formed. See 16 R. C. L. 291; McRae v. State, 62 Fla. 74, 57 South. Rep. 348.

The McRae case definitely holds that the action of the court in holding a juror to be qualified over defendant's objection works no injury to the accused if the objectionable venireman does not serve, even though the accused exhausted his statutory number of peremptory challenges, when it does not also appear that any objectionable juror was selected after the defendant's challenges were exhausted. The reason given for the rule is that the accused has a right to an impartial jury but is not entitled to any particular persons as jurors.

In a case where an objectionable juror is challenged by the defendant for cause and the court wrongfully overrules the challenge and the defendant uses one of his peremptory challenges to excuse the objectionable venireman, the record should show that the jury finally impanelled contained at least one juror objectionable to the defendant, who sought to excuse him peremptorily but the challenge was overruled.

The first assignment of error is not sustained.

During the trial of the cause R. F. Johnson, court reporter and stenographer, was called as a witness in behalf of the State. He identified a certain document as the stenographic report reduced to writing of the testimony of Dr. H. O. Snow which was given by him on a former trial of the four persons, including the defendant, indicted for the murder of Henry B. Driggers.

The document was offered by the State and read in evidence over the defendant's objection. The testimony was in substance that Dr. Snow, who was county physician, in company with other officials and in presence of the sexton of the cemetery exhumed the body of H. B. Driggers about a week after it had been buried and examined it. The result of the examination being the discovery of a bullet wound in the back of the deceased and a bullet just under the skin of the chest about two inches to the left of the right nipple. The bullet was removed and identified by the witness. There was also discovered a wound under the right knee ranging from the back toward the front. The wound was a small one. This evidence was offered because Dr. Snow for whom a subpoena had been issued was out of the State when the subpoena was issued.

During the trial Dr. Snow appeared and gave, in person, his testimony which in substance was the same as that given upon the former trial. Upon cross examination he said that the bullet removed from the dead man's breast "ranged to the left from the place it entered."

The reading in evidence of the transcribed stenographic report of Dr. Snow's testimony given on the first trial is alleged to be harmful error.

The presence of Dr. Snow at the trial and his examination as a witness two or three days afterwards would seem to indicate that even under Section 2723, Revised General Statutes, 1920, a sufficient reason had not been given why the witness was not produced. It is true that it was shown that a subpoena had been issued for the witness among others on April 19th and that an effort to serve it upon the doctor at his office was made on the 21st and two other unsuccessful efforts were made by the deputy to serve him at the office, according to the deputy. The office girl how-

ever testified that no effort was made to serve a subpoena upon the doctor at his office, but several persons came and asked her where he was and she replied to all such inquiries that she did not know. Such showing could hardly be deemed sufficient, especially when it is considered that at the first trial which resulted in a mistrial the witness testified and may have been discharged or released from his recognizance to appear at the second trial. The statute, we think, required some show of reasonable diligence on the State's part to procure the attendance of the witnesses, even if the stenographer's transcription of his notes was admissible at all under the provisions of Section 2723, Revised General Statutes.

Aside from that however the court's ruling and the State's offer of the evidence was directly in the face of the provisions of Chapter 8572, Laws of Florida, 1921.

During the January term of the Supreme Court, 1920, in an opinion prepared by the late Judge James T. Wills, the question of the admission in evidence in a criminal case of the testimony of a witness at a former trial was exhaustively discussed by Judge Wills in the majority opinion and by Chief Justice Browne, who took a contrary view in a dissenting opinion. Following the opinion in the Blackwell case, which is reported in 79 Fla. 709, 86 South. Rep. 224, the legislature enacted the above statute. The language of the statute is somewhat involved but its evident purpose was to destroy the effect of the opinion in the Blackwell case, *supra*. The statute seems to have been ignored in the trial of this case.

Whether the error in admitting the transcription of the stenographer's notes of Dr. Snow's testimony given at a former trial was cured by the subsequent production of the witness himself who was required to testify is the question presented by the second assignment of error.

The testimony given by the doctor in person and the stenographer's transcription of his notes of the same witness' testimony as given upon a former trial are in substance the same. It varies in detail slightly but that very difference may have been considered of some significance and the writing may have been taken as of better and more reliable evidence. In any event, as was said by Mr. Chief Justice Browne in Gunn v. State, 78 Fla. 599, 83 South. Rep. 511, "This court cannot look into the minds of the jury and determine to what extent such testimony induced the verdict. Nor can we say that it had no effect and was harmless." As in the Gunn case so in this one the State Attorney introduced the evidence, urged its admisibility, evidently because he thought it would be of value in determining the guilt of the defendant.

If it had that effect, and we cannot say it did not, then the defendant suffered an injury wrongfully put upon him. The error committed in allowing the transcribed testimony of Dr. Snow to be read in evidence infringed a fundamental right of the defendant; that of being confronted by the witness against him. It was held in the Blackwell case, *supra*, that the constitutional guaranty was satisfied by one confrontation, but the legislature by Chapter 8572 *supra* has declared otherwise and provides that on each trial the defendant shall have the right of confrontation by the witnesses against him.

The word "technical" is sometimes, if not commonly, used to convey the idea of conformation to some formula, conventionality, ritual or the like which has no real significance and is an empty, vacuous ceremony making only for appearance and not for substance. In such sense, the court's error was not technical. It was of substance and may have been very injurious. The second assignment is well taken.

There are other assignments of error which are unnecessary to be discussed because as the judgment should be reversed upon the ground laid in the second assignment of error the remaining questions become unimportant to a decision of this case.

At the risk, however, of being criticized for unnecessary words, we will say that this court has never placed itself upon record as announcing a rule of evidence under which any drawing, map, plan or sketch, however crudely executed and inaccurate it may be- as a representation of a place the topography and land marks of which are objects about which testimony is offered, may be exhibited in evidence.

The rule as anounced by this court upon the subject is as follows: ''A map, plan or picture whether made by the hand of man or photography, if *verified* as a true representation of the subject about which testimony is offered, is admissible in evidence to assist the jury in understanding the case.'' See Adams v. State, 28 Fla. 511, 10 South. Rep. 106.

For the error pointed out the judgment is reversed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J.—Dissenting.

In view of the evidence adduced and the charges given, the errors complained of could not reasonably have been prejudicial or harmful to the defendant in the trial that resulted in his conviction of manslaughter. Manslaughter is not a degree of murder, but is a grade or degree of un-

lawful homicide.  Boyett v. State, 69 Fla. 648, 68 South. Rep. 931.

Errors in the admission of evidence that are not vital, will not cause a reversal of a judgment when the testimony clearly establishes the guilt of the accused, and the judgment is in accord with the law and the charge of the court. Wilkins v. State, 75 Fla. 483, 78 South. Rep. 523; Milligan v. State, 75 Fla. 815, 78 South. Rep. 535; McQuagge v. State, 80 Fla. 768, 87 South. Rep. 60; Ward v. State, 83 Fla. 311, 91 South. Rep. 189; Owens v. State, 65 Fla. 483, 62 South. Rep. 651; Kersey v. State, 73 Fla. 832, 74 South. Rep. 983; Chauncey v. State, 68 Fla. 93, 66 South. Rep. 430; Robinson v. State, 70 Fla. 628, 70 South. Rep. 595.

The admission of incompetent evidence is harmless error, when the evidence properly admitted is conclusive of the defendant's guilt.  Hinson v. State, 62 Fla. 63, 56 South. Rep. 674; Edington v. State, 81 Fla. 634, 88 South. Rep. 468; Poyner v. State, 81 Fla. 726, 88 South. Rep 762; Seymour v. State, 66 Fla. 133, 63 South. Rep. 7; Rhodes v. State, 65 Fla. 541, 62 South. Rep. 635; Wallace v. State, 41 Fla. 547, 26 South. Rep. 713; Wilson v. State, 47 Fla. 118, 36 South. Rep. 580; Synes v. State, 78 Fla. 167, 82 South. Rep. 778; Sims v. State, 54 Fla. 100, 44 South. Rep. 737; Patrick v. Kirkland, 53 Fla. 768.

The admission in evidence under Section 2723, Revised General Statutes of 1920, of a stenographic report of the testimony of a physician as to an autopsy held by him upon the deceased, taken on a former trial of the accused with others for the same offense, was harmless as the physician was afterwards "produced" as required by Ch. 8572 of the statutes and testified in the case to all the material facts contained in the report of testimony taken at the former trial which was erroneously admitted in evi-

dence. There was no controversy as to the location and nature of the fatal wound which was the matter testified to by the witness. At the trial the accused did "meet the witness against him face to face" as required by the Constitution and by Chapter 8572, Revised General Statutes. The statute, Chapter 8572, forbidding the use of the report of the testimony became a law subsequent to the homicide; and if it may be regarded as applicable to the trial proceedings in view of the broad provisions of Section 32, Article III of the Constitution, that "the repeal or amendment of any criminal statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment," the provision of the statute that "testimony of a witness given upon a trial of a criminal cause shall not be admitted against an accused person in a subsequent trial," was violated, but as the witness was afterwards "produced" and testified in the case as required by the statute, the violation of the statute in admitting the report of testimony at the former trial was harmless, as the testimony related to the nature of the wound inflicted upon the deceased, and not to the guilt of accused in firing the shot, and Section 2812, Revised General Statutes, relative to harmless errors is as binding as is the statute forbidding the use of the transcribed testimony, the purpose of both statutes being that "by due course of law, right and justice shall be administered" as is required by Section 4, Declaration of Rights of the State Constitution.

The witness who referred to a drawing in giving testimony stated that was a correct diagram of the location. If under the rule stated in Hisler v. State, 52 Fla. 30. 42 South. Rep. 692, the diagram was not properly used in evidence, the error if any was manifestly harmless as the diagram was not essential to the merits of the verdict

found, and it could not reasonably have prejudiced the defendant.

Self defense was interposed to justify the firing of the fatal shot that entered the back of the deceased. The statutory elements of manslaughter do not necessarily include an intent to kill.

Section 5032, Revised General Statutes of 1920, provides that: "Homicide is justifiable when committed by any person * in the lawful defense of such person * when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished."

"The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article, shall be deemed manslaughter, and shall be punished by imprisonment in the State prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars." Sec. 5039 Rev. Gen. Stats. 1920.

"Whoever shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter." Sec. 5043 Rev. Gen. Stats. 1920.

In order to justify a homicide on the ground of self-defense under our statutes, there must be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there must be imminent danger (real or apparent) of such design being accom--

plished. While the danger need not be actual, nor the necessity to kill real, yet the surrounding circumstances as they appear to the slayer at the time he does take life, must be such as would induce a reasonably cautious man to believe that the danger was actual and imminent, and the necessity real, in order that the slayer may be justified in acting upon his own belief to that effect. Green v. State, 43 Fla. 556, 30 South. Rep. 656; Fuentes v. State, 64 Fla. 64, 59 South. Rep. 395; Stafford v. State, 50 Fla. 134, 39 South. Rep. 106; Snelling v. State, 49 Fla. 34, 37 South. Rep. 917; Morrison v. State, 42 Fla. 149, 28 South. Rep. 97; Smith v. State, 25 Fla. 517, 6 South. Rep. 482; Alvarez v. State, 41 Fla. 532, 27 South. Rep. 40; Olds v. State, 44 Fla. 452, 33 South. Rep. 296; Pinder v. State, 27 Fla. 370, 8 South. Rep. 837; Padgett v. State, 40 Fla. 451, 24 South. Rep. 145.

"A defendant to justify his acts on the ground of self defense must have used all reasonable means within his power and consistent with his own safety, to avoid danger and to avert the necessity of taking the life of the deceased." Stafford v. State, 50 Fla. 134, 39 South. Rep. 196; Snelling v. State, 49 Fla. 34, 37 South. Rep. 917; Owens v. State, 54 Fla. 383, 60 South. Rep. 340; Doke v. State, 71 Fla. 633, 71 South. Rep. 917. "And provided the defendant did not take the life of the deceased after all real or apparent necessity for doing so had ceased." Peadon v. State, 46 Fla. 124, text 136, 35 South. Rep. 204; King v. State, 54 Fla. 47, 44 South. Rep. 941. There must have been not only the belief, but also reasonable ground for the accused to believe that, at the time of killing the deceased, he was in imminent or immediate danger of his life or great bodily harm from the deceased, to excuse the homicide on the ground of self-defense. Wilson v. State, 30 Fla. 234, 11 South. Rep. 556.

The circumstances of a case may at least make it a question for the jury whether a killing was not in pursuance of a previously formed design to kill, instead of having been the result of a mere purpose of self-defense, although at the time of the altercation the first overt act may have come from the person slain. Ballard v. State, 31 Fla. 266, 12 South. Rep. 865.

Upon the subject of self defense, the question of whether the defendant was reasonably apprehensive of danger or great harm from the deceased is a question of fact to be gathered by the jury from all the circumstances in the case. Harris v. State, 75 Fla. 527, 78 South. Rep. 526; Ward v. State, 75 Fla. 736, 79 South. Rep. 699.

Where the testimony upon a charge of homicide is so strong and clear as to preclude the conclusion that the killing was excusable or justifiable, and that a verdict of guilty of manslaughter in the third degree is fully sustained by the evidence, the verdict should not be set aside upon the ground that the judge did not instruct the jury fully upon the question of justifiable or excusable homicide. Brown v. State, 18 Fla. 472.

Where the testimony is clearly sufficient to sustain the verdict, and it is evident that no jury could have been sustained by an error in an instruction given to the jury, the verdict will not be disturbed. Wooten v. State, 24 Fla. 335, 5 South. Rep. 39, 1 L. R. A. 819.

Alleged errors in giving or refusing charges or instructions, and in the admission or rejection of testimony which do not weaken the effect of the admitted testimony, and which do not reach the legality of the trial itself will not be considered grounds for reversal where the evidence leaves no room for reasonable doubt of the defendant's guilt. Hopkins v. State, 52 Fla. 39, 42 South. Rep. 52.

Where no fundamental rights have been violated, and the evidence of guilt is amply sufficient, technical errors in rulings on the admission of testimony or in giving or refusing charges will not cause a reversal. Gee v. State, 61 Fla. 22, 54 South. Rep. 458; Goff v. State, 60 Fla. 13, 53 South. Rep. 327; Coatney v. State, 61 Fla. 19, 55 South. Rep. 285; Wallace v. State, 41 Fla. 547, 26 South. Rep. 713; Caldwell v. State, 43 Fla. 545, 30 South. Rep. 814; Davis v. State, 47 Fla. 26, 36 South. Rep. 170; Wilson v. State, 47 Fla. 118, 36 South. Rep. 580; Sallas v. State, 61 Fla. 59, 54 South. Rep. 773.

Chapter 6223 Acts of 1911, Section 2812 Revised General Statutes 1920, as to harmless errors, merely enacted into law a rule of decision that in substance and effect had been theretofore observed by this court. The judicial rule and the statute each in effect forbids a reversal for errors that were rendered harmless by other matters in the proceedings or by the verdict or judgment in the cause.

The judgment should not be reversed or a new trial granted in any case, civil or criminal, for errors in rulings upon admission or rejection of evidence, or for errors in giving or refusing charges, or for errors in any other matter of procedure or practice, unless it shall appear to the court from a consideration of the entire cause that such errors injuriously affect the substantial rights of the complaining party. Nor should a judgment be reversed or a new trial granted on the ground that the verdict is not sustained by the evidence, unless it appears that there was no substantial evidence to support the finding, or that upon the whole evidence the verdict is clearly wrong, or that the jury were not governed by the evidence in making their finding. Johnson v. State, 80 Fla. 61, 85 South. Rep. 155; Dixon v. State, 79 Fla. 586, 84 South. Rep. 541; Sandlin v. State, 76 Fla. 368, 79 South. Rep. 714; Crane v.

State, 76 Fla. 236, 79 South. Rep. 806; Kersey v. State, 73 Fla. 832, 74 South. Rep. 983; Seymour v. State, 66 Fla. 133, 63 South. Rep. 7; Shuler v. State, 84 Fla. 414, 93 South. Rep. 672; Lewis v. State, 84 Fla. 466, 94 South. Rep. 154; Breen v. State, decided this term; Boyington v. State, 77 Fla. 602, 81 South. Rep. 890; Padgett v. State, 64 Fla. 389, 59 South. Rep. 946; Barrentine v. State, 72 Fla. 1, 72 South. Rep. 280; Thomas v. State, 73 Fla. 115, 74 South. Rep. 1.

In this case it appears that there was on a road near the home of the deceased, an encounter between the deceased and four others who were jointly indicted for the murder of the deceased; that after the deceased's gun was taken from him by his antagonists he called to his wife to bring his pistol from his house and that several shots were fired from the pistol at his antagonists by the deceased, and one or more shots were fired from shot guns by some of the antagonists, and one rifle shot was fired by the plaintiff in error W. H. Young at the deceased. The deceased was mortally wounded by a rifle shot in the back. The bullet "passed through the body from the rear to the front," and lodged "under the skin about two inches to the left of the right nipple." This undisputed physical fact, taken with all the testimony, shows that the deceased was retreating from the encounter when he was fatally wounded by the shot admittedly fired by the plaintiff in error. If the deceased was retreating there could under the circumstances have been no reasonable ground for the accused to apprehend imminent danger of great personal injury from the deceased. The defendant below testified that when the deceased fired the last shot from his pistol he dropped his hand and turned his side towards the accused just as the accused fired the fatal shot. The jury in effect found on supporting testimony that the fatal

shot was fired after the deceased had turned his back to the accused and was retreating.

As the deceased was fatally shot in the back after he had ceased firing and had dropped his hand by his side and had turned from his antagonists, the testimony of the defendant that he fired the fatal shot in self defense, when considered with all the evidence, does not tend to indicate that when the deceased was shot by the accused, the latter had "reasonable ground to apprehend a design" on the part of deceased "to commit a felony" on the accused or to do him "some great personal injury," and that there was "imminent danger of such design being accomplished," as contemplated by the statute. Under these circumstances as shown by the evidence, an erroneous abstract charge that an accused "must satisfy the jury that the defense was necessary at the time" &c., could not have harmed the defendant, because the deceased having been shot in the back the testimony of the defendant under the circumstances in evidence does not raise a reasonable doubt as to the unlawfulness of the homicide. The testimony clearly warrants a finding by the jury that there was no real or apparent danger of "great personal injury" to the accused by the deceased, when the accused fired the fatal shot, and that the defendant did not use all reasonable means within his power and consistent with his own safety to avoid danger and to avert the necessity of taking the life of the deceased and that the accused took the life of the deceased after all real and apparent necessity for doing so had ceased.

The testimony adduced to show justification in self defense (Sec. 5033 Rev. Gen. Stats. 1920), taken in connection with the entire evidence including the physical facts of the fatal injury, is not sufficient to raise a reasonable doubt of the guilt of the defendant of an unlawful homi-

cide, the jury having found the lowest degree, therefore errors in admitting or excluding testimony that did not violate fundamental rights of the accused, and in refusing a special charge defining "a reasonable doubt," none having been given, could not reasonably have prejudiced or harmed the defendant. Brown v. State, 18 Fla. 472; Willingham v. State, 21 Fla. 761; Wooten v. State, *supra;* Johnson v. State, 29 Fla. 558, 10 South. Rep. 686. The same result follows if under the Gilchrist statute, Chapter 6223, Acts of 1911, Section 2812 Revised General Statutes of 1920, which requires the court, when applying the statute, to make "an examination of the entire case," the charge on self defense that was given and was assigned as error but was not duly excepted to (Bynum v. State, 46. Fla. 142, 35 South. Rep. 65), should be and is considered in determining whether "the error complained of has resulted in a miscarriage of justice." See Witherspoon v. State, 76 Fla. 445, 79 South. Rep. 449; Sykes v. State, 68 Fla. 348, 67 South. Rep. 121.

"The mere fact that technical error was committed by the trial court in some of its rulings may not be sufficient; the errors must have been harmful or prejudicial to the rights of the plaintiff in error." Danson v. State, 62 Fla. 29, 56 South. Rep. 667.

While the court charged the jury that "before a person can avail himself of the defense that he used a deadly weapon in the defense of his life and be justified, he "must satisfy the jury that the defense was necessary at the time" &c., the court also charged the jury: "Remember, it would be a violation of your oath as jurors and of your duty as citizens to convict accused persons on testimony which fails to convince you beyond a reasonable doubt of their guilt," and that "a person charged with the commis-

sion of an offense is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption of innocence follows the accused throughout the trial until you gentlemen arrive at a verdict;'' and that ''The court charges you that under the law of this State the defendant is entitled to the benefit of every reasonable doubt that arises from the evidence or the lack of evidence in the case.''

The charges are abstract and in the main correct.

In view of the entire evidence and of the charges taken as an entirety, it does not seem reasonable that the plaintiff in error was injured by the abstract statement in the charge first above quoted, that a defendant ''must satisfy the jury'' that he acted in self defense.

The statutes of the State do not define the phrase ''a reasonable doubt'' or require a definition of it to be given to the jury when instructing them as to the nature of the proofs required for conviction in a criminal prosecution; and definitions formulated by the courts and given in charges to the jury, if considered at all by the jury, may tend to confuse and mislead rather than to enlighten and assist them in determininng the issues being tried. Certainly no harm could reasonably have resulted to the defendant in this case from a failure or a refusal of the court to give to the jury a definition of ''a reasonable doubt.''

WEST, J.—Dissenting.

The introduction in evidence of the stenographic report, reduced to writing, of testimony of the physician who examined the body of the deceased, which was given by the witness at a former trial of the defendant and others jointly indicted with him, was error. Its admission

is expressly forbidden by statute. Chap. 8572, Acts of 1921. But later during the progress of the trial this witness was called, appeared and testified and his evidence was "in substance * * * the same as that given upon the former trial." The accused did meet the witness "face to face" at this trial. Opportunity to fully cross-examine him was afforded. People v. Elliott, 172 N. Y. 146, 60 L. R. A. 318; Robertson v. State, 63 Tex. Crim. 216, 142 S. W. Rep. 533, Ann. Cas. 1913C, 440. Not only so, the means were afforded by the State to the accused to discredit the witness, if, there was variance between the testimony given by him at the two trials, by contrasting inconsistent statements, if any, made on the former trial with the testimony given by him at the trial then in progress. So the error was not harmful. It tended rather to his benefit than his detriment.

There was a request from defendant's counsel to the court to give to the jury a charge defining the term "reasonable doubt." The phrase "reasonable doubt" may not be susceptible of precise definition, but the definition contained in the charge requested has been approved by this court. The trial court refused to give the requested charge. This refusal is assigned as error and the following authorities are relied on: Reeves v. State, 29 Fla. 527, 10 South. Rep. 901; Davis v. State, 46 Fla. 137, 35 South. Rep. 76.

In the latter case this court said: "The second instruction was a request for a definition of the words 'reasonable doubt,' and was couched in the language approved by this court in the case of Lovett v. State, 30 Fla. 142, 11 South. Rep. 550, and also in Bassett v. State, 44 Fla. 12, 33 South. Rep. 262. The court did not in his charge give or attempt to give a definition in any form, nor was

any instruction given embracing such a definition. We have held that the giving of the definition in any of the forms approved by this court will dispense with the necessity for giving the definition in another form, but that it is error when no charge on the subject has been given, to refuse to give one of the definitions when so requested. Whatever views may be entertained by other courts as to the advisability of attempting a definition of this phrase, the rule is well settled in this State. In Reeves v. State, 29 Fla. 527, 10 South. Rep. 901, the court below had charged that if the jury has any doubt as to the guilt of the defendant, they should give him the benefit of that doubt and acquit, yet this court held it was error to refuse an instruction as to what constitutes a reasonable doubt, and for this error alone reversed the case. Oliver v. State, 38 Fla. 46, 20 South. Rep. 803. * *. * For refusing to charge as requested upon the definition of a reasonable doubt, the judgment is reversed and a new trial awarded.''

The giving of the following charge is assigned as error : ''A person may act upon appearances but when he does so act, he does so at his own peril, and before a person can avail himself of the defense that he used a deadly weapon in defense of his life and be justified, he must *satisfy* the jury that the defense was necessary at the time and that he did all that he could to avoid it, and that it was necessary to protect his own life or to protect himself from such great bodily harm as would give him a reasonable apprehension that his life was in imminent danger.'' (Italics supplied). This charge is clearly erroneous. It imposed upon the defendant the burden of establishing with a greater degree of certainty than the law requires the necessity of a resort to the means employed by him in defense of himself. Hathaway v. State, 32 Fla. 56, 13

South. Rep. 592; Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235; Lane v. State, 44 Fla. 105, 32 South. Rep. 896.

In Lane v. State, *supra,* in considering a charge substantially the same as this, the court said: ''The jury need not be satisfied. If the evidence raises a reasonable doubt it will be sufficient. Furthermore, if the circumstances are such as to authorize a reasonably cautious man to believe his life to be in immediate danger, or that he was in immediate danger of receiving great personal injury, it will suffice, though an actual necessity to kill does not exist. The charge also conveys the idea that if a deadly weapon is used in defense of life the accused must satisfy the jury that the killing was necessary to protect life or to protect the slayer from such great bodily harm as would give him a reasonable apprehension that his life was in immediate danger. The statute justifies the killing when done under circumstances authorizing it to protect life or the slayer from great personal injury. The charge is clearly wrong, and after mature reflection we are of opinion that we cannot safely hold that its error was fully corrected by other instructions given, or that it was entirely harmless.''

On behalf of the State it is conceded that the refusal to give the requested charge defining ''reasonable doubt'' is error, but it is contended that in view of the evidence adduced and the verdict of manslaughter returned, the principle announced in the ''Harmless Error'' statute (§2812 Rev. Gen. Stats.) should be applied, and that ''after an examination of the entire case,'' unless it appear that the error complained of has resulted in a miscarriage of justice, the judgment should be affirmed.

With respect to the erroneous charge given by the trial court, the position of the State is that this charge not hav-

ing been objected to in the motion for new trial, the point is not presented to this court for review.

On behalf of the defendant it is contended that the two positions are inconsistent. The argument is that under the authorities cited both errors are obvious; that to overcome the first the statute authorizing "an examination of the entire case" is invoked; that this "examination" discloses the erroneous charge given, notwithstanding the "error as to  *  .*  .*  procedure" by the defendant in not duly objecting thereto, and that if the statute is to be applied as it operates against the defendant, it should also be applied as it operates to his benefit. This argument, while ingenuous, is fallacious. It overlooks the express provision of the statute that an "examination of the entire case" is for the purpose of ascertaining whether the "error complained of" has resulted in a miscarriage of justice. Charges given may be "complained of" by being excepted to when given or embodied in a motion for new trial. Steele v. State, 85 Fla. 57, 95 South. Rep. 299; Bynum v. State, 46 Fla. 142, 35 South. Rep. 65, §2700 Rev. Gen. Stats. Errors contained in charges given but not objected to are waived. Errors waived are not complained of." The "Harmless Error" statute (§2812 Rev. Gen. Stats.) does not repeal Section 2700, Rev. Gen. Stats.. nor abrogate established rules of procedure. It was not designed to extend the scope of review on writ of error. It does little, if any, more than enact into law a rule of decision long established in this jurisdiction. This contention therefore fails.

The giving of the erroneous charge not having been so objected to as to present the question here for review, cannot be considered. In view of other charges given and the evidence contained in the record, I do not regard the re-

fusal of the trial court to give the requested charge defining the term ''reasonable doubt'' as prejudicial.

No harmful error having been made to appear, the judgment should be affirmed.